**6**

KENTUCKY BAR ASSOCIATION,
Complainant,

v.

Eric S. SMITH, Respondent.

No. 83–SC–144–KB.

Supreme Court of Kentucky.

Oct. 12, 1983.

As Modified July 5, 1984.*

Bruce K. Davis, Director, Michael M. Hooper, Asst. Director, KY Bar Ass'n, Frankfort, for complainant.

Bert T. Combs, Wyatt, Tarrant & Combs, Louisville, Ben L. Kessinger, Jr., Stites & Harbison, Lexington, for respondent.

## OPINION OF THE COURT

This is a disciplinary case in which respondent was charged with unethical and unprofessional conduct. The Board of Governors of the Kentucky Bar Association found respondent guilty of unethical and unprofessional conduct and recommended that he be suspended from the practice of law for a period of eighteen months.

We have made an independent review of the record, the transcript and considered the

briefs and arguments of the parties. We adopt the decision of the Board of Governors.

Respondent represented a Dr. Nath who paid him a retainer and employed respondent to organize a corporation to take care of some other interests of Nath. Respondent was paid a retainer by this corporation. Dr. Nath frequently consulted with respondent and visited his office frequently. It was in respondent's office that Dr. Nath met Towles and thus began the scenario that ended in this disciplinary proceeding.

Respondent became acquainted with Towles and organized a corporation for him, REBSCS (Real Estate Buyers and Sellers Consultant Services). Towles was attempting to organize and sell a system whereby private individuals could be instructed on how to buy and sell options on real estate and be members of a referral network within which a person who procured an option could communicate with others who might know of a buyer and arrange the sale of the option for a fee. Respondent performed the legal work with an agreement that Towles would pay respondent an attorney fee of five percent (5%) of the gross earnings of the business plus the option to purchase five percent (5%) equity in the business. In addition, respondent received the right to inspect the books of the corporation, to prevent its sale of stock, reorganization, or disbursement of any amounts in excess of $1,000 without written consent of respondent.

Respondent spent substantial time on the enterprise, designing a computer network linking franchised realtors with each other and with private real estate investors. In view of the amount of services performed by respondent, an addendum to the agreement was executed providing respondent with an option to acquire from Towles a number of shares of capital stock as shall equal twenty-five percent (25%) of all outstanding shares of REBSCS Inc's stock.

Respondent permitted Towles to use a vacant office in his building to work on REBSCS related matters, use of secretarial help and telephone.

* Editor's note: Received for publication June 20, 1994.

It was there that Dr. Nath first saw Towles, and after inquiry about the business and being on the lookout for business deals, Dr. Nath became interested. The upshot was that Dr. Nath, through a newly organized corporation, made an unsecured loan to REBSCS. Within four weeks, due to personal problems experienced by Towles, REBSCS became moribund, and Dr. Nath lost any hope of the loan being repaid. At the time of the complaint against respondent, REBSCS had a minimal bank balance.

It is in the events leading up to the loan that the Kentucky Bar Association has charged respondent with unethical and unprofessional conduct.

We do not attempt to unravel all the contradictory testimony regarding what Dr. Nath testified respondent said and did in order to persuade Dr. Nath to invest in REBSCS and what respondent testified that he said and did in denial.

It is uncontradicted that Nath Holdings was formed by respondent on February 13, 1980, and the certificate of incorporation was issued on February 13, 1980. Nath gave respondent a check for $30,200 on the same day and a bank account for the corporation was opened by respondent. Respondent was registered agent for service of process and used his office as mailing address for the corporation. Whether or not Nath Holdings was set up for the purpose of making the investment or loan, the timing leads to that inference.

When the meeting consumating the transaction took place, respondent had prepared a check on Nath Holdings made to REBSCS in the amount of $30,000 as a loan in exchange for convertible debenture with conversion within five years into an amount equal to ten percent (10%) of the total shares in REBSCS.

This check was voided at the request of Dr. Nath, and respondent prepared another check marked "loan." There was no security or promissory note. Nath testified respondent told him all that would be taken care of later. Respondent denied this and testified he could not under the circumstances perform any service for REBSCS. In any event, REBSCS received the check. On that date REBSCS had a bank balance of $73.31. This money was quickly dispensed, first $10,000 to Towles to repay for expenses and later $5,500 to Towles to repay for expenses. The bank balance of REBSCS shortly was reduced to about $41.

Respondent's defense that it was not established that he represented Dr. Nath in this transaction is a non-defense.

Respondent had performed all the legal work for REBSCS and he owned a contingency interest in REBSCS. Respondent's office address was used as a mailing address for REBSCS. Respondent also represented Dr. Nath and one of his corporations generally. We consider Nath Holdings as an extension of Dr. Nath personally.

Whether Dr. Nath knew that respondent owned an interest in REBSCS and whether Dr. Nath knew that Towles planned to reimburse himself for $10,000 in expenses after the loan are beside the point.

Respondent engaged in these activities culminating in preparing a check and, to that extent, participated in a transaction whereby one client lent money to a corporation in which respondent had a substantial interest. A lawyer simply cannot defend against a charge of unethical and unprofessional conduct in such a scenario. In placing himself in this position, respondent incurs the penalty imposed as recommended by the Kentucky Board of Bar Governors to this court. It is only for the reason that we cannot be sure from the evidence as to the actual misrepresentation that we do not impose a more severe penalty.

This situation is one of first impression in this Commonwealth and should illustrate that we are committed to the proposition that, in financial dealings with a client, a lawyer must exercise the utmost good faith and fidelity to a client and not place himself or herself in a position of participating in a transaction, such as here, so as to bring the bench and bar into disrepute. The unethical and unprofessional conduct here and the consequential loss of money by a client, Dr. Nath, is in our opinion such unethical and unprofessional conduct as to warrant the suspension of respondent.

The contractual right of respondent to prevent disbursement of amounts in excess of $1,000 on behalf of REBSCS imposed a responsibility on respondent to see that disbursements were in accordance with his statement to Nath that the loan, with the exception of $10,000 to Towles to repay for personal expenses, was to be used exclusively for promotional purposes. So far as we can tell from the record, none of the loan was used for promotional purposes.

Accordingly, it is ordered that respondent be suspended from the practice of law in this Commonwealth for a period of eighteen months and that he inform his clients in compliance with SCR 3.390, and pay the costs of this proceeding.

All concur except STEPHENS, C.J., who did not sit.